GREEN v. STATE OF INDIANA.

[No. 26,132.  Filed January 31, 1933.]

350

*Rex S. Emerick* and *Atkinson & Husselman,* for appellant.

*James M. Ogden,* Attorney-General, and *Harry Taylor,* Assistant Attorney-General, for the State.

HUGHES, J.—The appellant, president of the Garrett Savings, Loan and Trust Company, was indicted under §2479 Burns 1926 for receiving a deposit, knowing that the company was insolvent whereby the deposit was lost to the depositor. He was tried by a jury and found guilty. Judgment was rendered upon the verdict of the jury and he was fined $50.00 (double the amount of the deposit) and sentenced to prison for a period of not less than two nor more than fourteen years. There are three errors relied upon for reversal by the appellant: the overruling of his motion (1) to quash the indictment, (2) in arrest of judgment, and (3) for a new trial.

The appellant contends that under the first two assignments of error that the facts stated in the indictment do not constitute a public offense for the reason that (1) in order to state a public offense under §2479 Burns 1926 the indictment must charge that the appellant received such money as an officer of such bank or that he received it "by virtue of his employment," and he contends that the indictment fails to so charge, and (2) he contends that it is not a crime in the State of Indiana for an officer, agent, or employee of either a savings, loan, or trust company to accept and receive a deposit of money at a time when such savings, loan, or trust company was insolvent, although such insolvency was well known to such officer, agent, or employee and although such deposit was thereby lost to such depositor for the reason that the Banker's Embezzlement Statute, namely, §2479 Burns 1926, does not include within its provisions officers, agents, or employees of either savings, loan, or trust companies and therefore as such officers, agents, or employees are not enumerated and included in such section, they can not be guilty of embezzlement under said §2479.

As to the first contention, we find that the indictment contains the allegation that the appellant, Monte L. Green, on the thirty-first day of December, 1930, was then and there president and a director of the Garrett Savings, Loan and Trust Company . . ., that said Monte L. Green, who was then and there an officer of said banking company, well knowing the insolvency of said company and while acting as an officer, president and director of said company, did then and there feloniously, fraudulently and unlawfully receive and take from one . . . who was not then and there indebted to said bank the sum of twenty-five ($25.00) . . ., as a deposit within said banking company, whereby said sum was lost to the depositor. . . .

The appellant cites many cases as upholding his first contention. We feel that upon close analysis of these cases he is in error and that there is a distinct difference between them and the one at bar.

§2203 Burns 1926, provides that "words used in a statute to define a public offense need not be strictly pursued, but other words conveying the same meaning may be used." And §2224 Burns 1926, provides that an indictment or affidavit shall be sufficient as to the part charging the offense if the "offense charged is clearly set forth in plain and concise language without unnecessary repetition," and if it is "stated with a degree of certainty that the court may pronounce judgment upon a conviction according to the rights of the case." §2223 Burns 1926, provides that "words used in an indictment or information must be construed in their usual acceptance in common language, except words and phrases defined by law, which are construed according to their legal meaning."

The appellant asserts that "the indictment must charge that the appellant received such money as an officer of such bank in order to constitute a public offense." We feel that in construing the words of the indictment in their usual acceptation in common language that they charge that the appellant received such money as an officer of such bank. There is the positive statement in the indictment that Monte L. Green "was then and there the president of" . . . "and while acting as an officer, president, and director did then and there . . . receive . . . as a deposit within said banking company." The indictment certainly shows that there was a special trust in relation to the deposit and that by virtue of such trust the appellant had access to, control and possession of said deposit. While it is true that the indictment does not specifically charge in so many words that the appellant

had possession of the deposit by virtue of his employment or position, yet in the usual acceptation in common language this is the meaning of the charges in the indictment and is sufficient.

The appellant cites the case of *Hinshaw* v. *State* (1919), 188 Ind. 147, 122 N. E. 418, 421. The indictment in the Hinshaw case differs from that in this case in not sharing the receiving and taking, "while acting as an officer." In the Hinshaw case the court said, "It is fundamental that, in embezzlement, the taking and receiving part of the charge must be connected and coupled with the statement that such taking and receiving was by virtue of the office, or the agency, or the employment." We do not understand by this statement that it is absolutely necessary to use the exact words by "virtue of the office," in order to make an indictment good. If other words are used which convey the same meaning the indictment will be good. *Frost* v. *State* (1912), 178 Ind. 305, 99 N. E. 419. In the present indictment it is positively averred that the appellant was president and while acting as such he received the sum of $25.00 as a deposit within said banking company. This language certainly means, if it means anything, that he received and took the money by virtue of his office. This construction being true it is in complete harmony with all the cases cited by the appellant.

The appellant cites the case of *Frost* v. *State, supra,* as upholding his contention. We do not think so. In this case the affidavit stated the defendant "was then and there Treasurer of Clay Encampment Independent Order of Odd Fellows, and as such treasurer then and there had control and possession of . . . the property of . . . that the said Merle L. Frost while the treasurer of the said Clay Encampment . . . and in the possession and control of such money did then and there, un-

lawfully . . ." It is the contention of appellant in the above case by reason of the omission of the statement, "by virtue of his employment" affidavit was fatally defective. The court in this case said: "the allegation · that appellant was treasurer of Clay Encampment was a direct allegation of a particular employment necessarily involving a trust relation to the funds of the association, and the allegation that, 'as such treasurer' he had the control and possession of the money of the association, excludes any implication that he gained the control and possession by a trespass, or held it otherwise than rightfully by virtue of the office he held. We do not think that to have alleged that appellant held control and possession of the money 'by virtue of his employment,' as such treasurer would have added anything to the certainty of the affidavit."

The court cites and analyzes many of the cases cited by the appellant and made the apt statement that, "We think these cases (meaning the case of *Ritter* v. *State* (1887), 111 Ind. 324, 12 N. E. 501; *Colip* v. *State* (1899), 153 Ind. 584, 55 N. E. 739, 74 Am. St. Rep. 322; *State* v. *Winstandley* (1900), 154 Ind. 443, 57 N. E. 109; *State* v. *Winstandley* (1900), 155 Ind. 290, 58 N. E. 71; *Vinnedge* v. *State* (1906), 167 Ind. 415, 79 N. E. 353; *Wright* v. *State* (1907), 168 Ind. 643, 81 N. E. 660) . . . have defined the ultimate limit requiring certainty in an affidavit or indictment for embezzlement in the particular alleging with certainty the character of a defendant's access to, control or possession of the property alleged to have been embezzled by him; and we feel constrained to say that they should be strictly limited and the last one (*Wright* v. *State, supra*) disapproved, rather than to extend their force as precedents to overthrow the affidavit before us." The foregoing statement is especially applicable in the case before us. There was no error in overruling the mo-

tion to quash the indictment, and in arrest of judgment.

The appellant further contends that "it is not a crime . . . for an officer . . . a savings, loan, or trust company to accept and receive a deposit of money at a time when such a company is insolvent, although such insolvency is well known to such officer . . . and although such deposit is thereby lost to the depositor for the reason that . . . §2479 Burns 1926 does not include within its provision officers, . . . of either savings, loan, or trust companies."

The statute applies to "any officer, agent or employee of any banking company or incorporated bank doing a banking business in this state." The indictment charges that appellant "was . . . the president of the Garrett Savings, Loan and Trust Company . . . a corporation exercising the powers and privileges conferred on banks by the laws . . . and was . . . an incorporated company doing a banking business." We assume that proof was made of the facts alleged as the evidence is not presented by the appellant. It was provided by §3, ch. 20, Acts 1921; §3950, Sub. 9, Burns 1926, that loan and trust and safe deposit companies "shall exercise the powers and possess the privileges conferred on banks by laws of this state and all powers properly incidental thereto, or which may be necessary or usual in carrying on the general business of banking subject to the restrictions imposed by the laws of this state relative to a general banking business and trust companies that do a banking in conformity to the powers thus granted, are banking companies." *Rowley* v. *Pogue* (1932), 203 Ind. 655, 181 N. E. 589.

The appellant further contends that the trial court erred in permitting the State to introduce in evidence the record of a civil proceeding wherein the State of Indiana, on relations of Luther F. Symons, Bank Commissioner, of the State of Indiana, was

petitioner and Garrett Savings, Loan and Trust Company, was defendant, which civil proceeding was instituted on January 9, 1931, in the DeKalb Circuit Court, and wherein on January 24, 1931, it was found that such company was in a failing and insolvent condition and where a receiver was appointed for said company.

The concluding sentence of §2479 Burns 1926, under which this prosecution was instituted, provides that "the failure, suspension, or involuntary liquidation of such . . . banking company . . . within thirty days after the time of receiving such deposits, shall be prima facie evidence of an intent to defraud on the part of such . . . officer . . . of such banking company."

. It is insisted by the appellant that the record in the insolvency proceedings was not admissible for any purpose and offered an instruction which was refused at the trial to the effect that such evidence was introduced solely for the purpose of showing that the bank suspended business within thirty days after December 31, 1930, and that the jury could not consider the same for the purpose of determining whether or not the bank was insolvent on December 31, 1930.

Section 2479 Burns 1926, under which appellant was prosecuted, states:

"The failure, suspension, or involuntary liquidation of such banker, broker, person, or persons, firm, banking company, or incorporated bank, within thirty days after the time of receiving such deposit, shall be prima facie evidence of an intent to defraud on the part of such banker, broker, firm, person, banking company, or incorporated bank, or officer, agent, or employee, of such banking company, firm, or incorporated bank."

It has been held, not only by the courts of Indiana but by the highest courts of many other states, that such a provision as above quoted was within the power of the legislature to enact and that the same is consti-

tutional. In *Voght* v. *State* (1890), 124 Ind. 358, 24 N. E. 680, 681, the court held that the legislature had the power to enact provisions like the one now in question. The court said: "It has often been held that the legislature in defining a crime may also enact that proof of facts which are universally recognized as indicting guilt shall be sufficient prima facie evidence of the commission of an offense defined by statute." In *State* v. *Beach* (1897), 147 Ind. 74, 43 N. E. 949, 950, 46 N. E. 145, 36 L. R. A. 179, the court said: "We think it clear that the legislature has the power to prescribe rules of evidence and methods of proof. A law which would in effect exclude the evidence of a party, and thereby deny him the right to be heard, would deprive him of due process of law. A law which provides that certain facts are conclusive proof of guilt would be unconstitutional, as also would one which makes an act prima facie evidence of crime which has no relation to a criminal act, and no tendency whatever to establish a criminal act. If, however, the legislature in prescribing the rules of evidence in any class of cases leaves a party a fair opportunity to establish his case or defense, and give in evidence to the court or jury all the facts legitimately bearing on the issues in the cause to be considered and weighed by the tribunal trying the same, such acts of the legislature are not unconstitutional."

The following cases, and many others that might be cited, state the law to be that the legislature has the right to declare what shall be presumptive, or prima facie evidence of any fact: *Voght* v. *State, supra; Morgan* v. *State* (1889), 117 Ind. 569, 19 N. E. 154; *Richard* v. *Carrie* (1895), 145 Ind. 49, 43 N. E. 949; *State* v. *Sattley* (1895), 131 Mo. 464, 33 S. W. 41; *Holmes* v. *Hunt* (1877), 122 Mass. 505, 23 Am. Rep. 381. Conceding that the provision of the act in question is valid, it does not follow that it was proper for the state to

introduce in evidence the record in the civil action wherein it was found that the bank was in a failing and insolvent condition.

In a criminal case the burden is upon the State of Indiana to prove the defendant guilty beyond a reasonable doubt. In the instant case, the burden was upon the state to prove, among other things, that the Garrett Savings and Trust Company was insolvent on December 31, 1930. The bank may have been insolvent and in failing condition as far as the right to have a receiver appointed and yet not insolvent so far as a criminal proceeding is concerned. In the case of *Smith* v. *State* (1932), 203 Ind. 561, 181 N. E. 519, the court said: "We do not think an officer of a bank should be held guilty, under our statute, if, at the time the deposit was received, the assets of the bank fully equaled in value the sum of its debts, even though it may require some time to realize on these assets. The gist of the matter is that a deposit is received by a banker, knowing or having good reason to believe that the money will be lost to the depositor, by reason of the inability of the bank to return it; but, if the assets on a fair valuation are amply sufficient to pay all depositors, including the one in question, and all other debts of the bank, the bank could not be said to be insolvent in the usual sense of the term, nor is there any good reason for saying, in such a case, that the officer, so receiving deposits in the bank knew or had good reasons to know that the bank was insolvent. Suppose a banker finds that his bank is low in cash reserve, and in such a condition by reason of having failed to receive a large expected deposit of money, is therefore unable to pay the demands made upon his bank in the ordinary course of business, but an inventory of all the assets, . . . if liquidated in a reasonable time in a reasonably prudent manner in his honest judgment would be equal to or in excess of

its liabilities. Could it in justice and common sense be said that the receipt of a deposit by such banker would under such circumstances be criminal? Yet under the limited and restricted meaning of 'insolvency' he would. A banking institution in such condition might be a fit subject for a suit in equity for the appointment of a receiver to insure an equitable distribution of its property, on petition of its creditors, but certainly its officers not necessarily be criminals."

Under §2479 Burns 1926, under which appellant was prosecuted, the burden was upon the state to prove beyond a reasonable doubt that the bank was actually insolvent at the time alleged. The mere fact that in a civil action it was found to be insolvent and a receiver appointed therefor, the proceedings and records of such action would not prove that it was insolvent so far as a criminal proceeding is concerned.

One of the questions for the jury to decide was the solvency or insolvency of the bank, but by the introduction of the records and judgment in the civil action, the question was already decided in that particular case, and we know from common experience that a jury would probably follow the finding, on the question of solvency, as found in the civil action and this being true the right to cross-examine was taken away from the defendant and also his constitutional right to meet the witnesses face to face.

Section 65 Burns, being §13 of Act 1 of the Bill of Rights.

The case of *Kirby* v. *U. S.* (1898), 174 U. S. 47, 19 S. Ct. 574, 579, 43 L. Ed. 890, was a case wherein three parties had been found guilty and convicted of stealing postage stamps. Kirby was indicted on a charge of receiving stolen property. The trial court, over the objection of the defendant, permitted the government to introduce in evidence the record of the conviction of the

three for stealing the stamps. On appeal, Judge Harlan said: "The fundamental error in the trial court below was to admit in evidence the record of the conviction of the principal felons as competent proof for any purpose. That those persons had been convicted was a fact not necessary to be established in the case against the alleged receiver; for, under the statute, he could be prosecuted even if the principal felons had not been tried or indicted. As already stated, the effect of the charge was to enable the government to put the accused, although shielded by the presumption of innocence, upon the defensive, as to a vital fact involved in the charge against him by simply producing the record of the conviction of other parties of a wholly different offense with which the accused had no connection." So in the instant case, the appellant could have been indicted, and prosecuted without a judgment ever having been rendered finding the bank in a failing and insolvent condition. The effect of the introduction of the judgment and records in the receivership proceeding enabled the state to put the appellant, although shielded by the presumption of innocence and the right to face the witnesses and cross-examine, upon the defensive as to a vital fact involved in the charge against him by simply producing the record of the receivership proceedings in a wholly different case.

We hold that it was error to admit the proceedings and judgment of the civil action in evidence: *Smith* v. *State, supra; Com.* v. *Slavski* (1923), 245 Mass. 405, 140 N. E. 465, 29 A. L. R. pp. 281-287; *Cook* v. *State* (1911), 6 Okla. Cr. 477, 120 Pac. 1038; *McCabe* v. *State* (1909), 85 Neb. 278, 122 N. W. 893; *Spear* v. *State* (1912), 7 Okla. Cr. 379, 123 Pac. 852; *People* v. *Vammer* (1926), 320 Ill. 287, 150 N. E. 628; *People* v. *Schallman* (1916), 273 Ill. 564, 113 N. E. 113; *State* v. *Woods* (1905), 71 Kan. 658, 81 Pac. 184; *Kirby* v. *U. S., supra.*

The case of *State* v. *Beach, supra,* is cited by the attorney-general in support of the ruling made by the lower court in relation to the admission of the evidence now in question. This case, in our judgment, is clearly distinguished from the instant case. In the Beach case there was a voluntary assignment and schedule filed therewith, and the affidavit of the assignor annexed thereto, that the same contained a statement of all his property; the inventory, the reports of all sales of property, and the orders of the court confirming the same . . . are all competent evidence on behalf of the State upon the issues of the insolvency of appellee. . . . The foregoing evidence, offered and excluded, was not conclusive but was proper to be considered by the jury with all the other evidence in the case on the issue of insolvency. . . ."

It must be remembered that there was a voluntary assignment in the case of *State* v. *Beach, supra,* and the proceedings and documents relative to the assignment would clearly be admissible because he was bound by the proceedings he instituted in court. In the present case the appellant did not institute the proceeding and was not individually a party to the receivership action, and therefore would not be bound by the actions taken and had in a civil action when on trial as defendant in a criminal prosecution. Insofar as the case of *State* v. *Beach, supra,* is inconsistent with this opinion, it is hereby modified.

The appellant complains of instruction No. 4, tendered by the State, and given by the court over appellant's objection. The instruction, in effect, told the jury that if the trust company, of which appellant was president, had been engaged in the business of receiving deposits on checking accounts upon which depositors could draw by check, and that of receiving savings deposits, it was doing a banking business and was

an incorporated bank, within the meaning of §2479 Burns 1926. The words "was an incorporated bank," strictly and technically speaking, was incorrect. The statute involved here applies to "any banking company or incorporated bank, doing a banking business in this State," and, since a banking company doing a banking business in this State is just as much within the statute as an incorporated bank doing a banking business in this state, the statement made in the instruction, even though technically inaccurate, would not constitute reversible error.

Cause reversed, with instructions to the lower court to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.